**Quarles & Brady** LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602.229.5200

*Attorneys for Rewards Network Establishment Services Inc.*

Isaac M. Gabriel (#021780)
isaac.gabriel@quarles.com
Amy D. Sells (#024157)
amy.sells@quarles.com

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | In Proceedings Under Chapter 11 |
| METRO RESTAURANTS, INC., | Jointly Administered Case No. 4-14-bk-01278-BMW |
| Debtor. | |
| | **REWARDS NETWORK'S OBJECTION TO DEBTORS' MOTION FOR INTERIM AUTHORITY TO USE CASH COLLATERAL** |
| MCMAHON'S STEAKHOUSE, LLC, | Case No. 4-14-bk-01281-BMW |
| Debtor. | |
| OLD PUEBLO GRILL, LLC, | Case No. 4-14-bk-01283-BMW |
| Debtor. | |
| METROPOLITAN GRILL, LLC, | Case No. 4-14-bk-01284-BMW |
| Debtor. | |

This filing applies to:

☐ All Debtors
■ Debtors specified below:

MCMAHON'S STEAKHOUSE, LLC
OLD PUEBLO GRILL, LLC
METROPOLITAN GRILL, LLC

REWARDS NETWORK ESTABLISHMENT SERVICES INC. ("Rewards Network"), a secured creditor and party-in-interest in the above-captioned jointly administered Chapter 11 bankruptcy cases (the "Bankruptcy Cases") of METRO RESTAURANTS, INC. ("Metro"), MCMAHON'S STEAKHOUSE, LLC ("McMahon's"), OLD PUEBLO GRILL, LLC ("Old Pueblo"), and METROPOLITAN GRILL, LLC ("MG", together with McMahon's and Old Pueblo, the "Restaurant Debtors"), hereby files this Objection to the "Motion for Interim Authority to Use Cash Collateral" (the "Motion") filed by McMahon's and Old Pueblo.

In the Motion, McMahon's and Old Pueblo seek an order authorizing their continued use of Rewards Network's cash collateral in accordance with "Agreed Order: (I) Authorizing Debtors' Limited Use of Cash Collateral, and (II) Granting Postpetition Replacement Liens and Adequate Protection" (the "Agreed Order") [Doc. 94] entered into between Rewards Network and the Restaurant Debtors, which expired on May 6, 2014. Rewards Network hereby objects to the use of its cash collateral as provided under the terms of the Agreed Order because, in light of recent events, the terms of the Agreed Order no longer adequately protect Rewards Network. As explained in detail below, Rewards Network recently discovered that the Restaurant Debtors expended cash collateral without Rewards Network's authorization and in violation of the Agreed Order, in the amount of approximately $28,000. In addition, based on the limited information provided to Rewards Network, there appear to be numerous "cash" transactions which are not accounted for (*i.e.*, checks written out for "cash" and presumably cashed by the owners). Consequently, any future order concerning the use of Rewards Network's cash collateral must compensate Rewards Network for this loss.

## I. FACTUAL BACKGROUND.

In support of this Objection, Rewards Network states the following:

1. On January 31, 2014 (the "Petition Date"), each of the Restaurant Debtors filed a voluntary petition under Chapter 11, thereby commencing the Bankruptcy Cases.

2. As set forth in prior filings, Rewards Network is the first priority lienholder with blanket liens in all of the Restaurant Debtors' personal property. Pursuant to the various agreements with the Restaurant Debtors, the Debtors are each jointly and severally liable for all obligations owing to Rewards Network. As of the Petition Date, Rewards Network had a total secured claim against each of the Debtors (joint and several) in excess of $200,000.

3. On February 26, 2014, Debtors' counsel, Scott D. Gibson ("SDG") filed an "Application of Debtor for Retention of Attorneys" in each of the Debtors' Bankruptcy Cases [Doc. 19] (collectively, the "Applications").

4. Among other things, the Applications stated that "SDG *has received $5,000.00 for pre-petition services...*" Emphasis added. [Apps., p.2] In addition, the retainer agreements attached as exhibits to the Applications were dated February 24, 2014, *i.e.*, well after the Petition Date. These facts led Rewards Network to suspect that the retainers were paid to SDG post-petition.

5. Accordingly, on March 4, 2014, Rewards Network filed its "Limited Objection and Reservation of Rights to the Applications of Debtors for Retention of Attorneys" (the "Limited Objection") [Doc. 49], reserving its rights and remedies to seek disgorgement of the retainers paid to SDG, in the event Rewards Network is not adequately protected or its claims are not otherwise paid in full in these Bankruptcy Cases.

6. In addition, on April 3, 2014, pursuant to Rewards Network's request, SDG provided bank statements to Rewards Network for each of the Restaurant Debtors for the month of February 2014, which evidenced that the $5,000.00 retainer checks were deposited on the Petition Date **and did not clear each of the Restaurant Debtors' respective accounts until February 3, 2014 -- *i.e.*, after the Petition Date**.[1] True and correct copies of the bank

---

[1] In addition, these bank statements reflect multiple checks made payable to "cash" in the aggregate total of $8,083.25 during the month of February. *See* copies of checks on bank statements attached as Exhibit A. The Restaurant Debtors have not provided any explanation for these cash transactions. Moreover, there may be additional cash transactions in subsequent months that Rewards Network is not yet aware of because Rewards Network has not received copies of checks for any month other than February 2014.

Quarles & Brady LLP
Phoenix, Arizona 85004-2391

QB\116122.00201\27672641.1

statements showing copies of the checks are attached hereto as "**Exhibit A.**" Thus, the monies in the possession of Debtor's counsel as "retainers" constitute Rewards Network's postpetition cash collateral and Rewards Network has never consented to their use for payment of Debtors' attorney's fees.

7. On May 3, 2014, the Court entered the "Agreed Order: (I) Authorizing Debtors' Limited Use of Cash Collateral, and (II) Granting Postpetition Replacement Liens and Adequate Protection" (the "Agreed Order") [Doc. 94], which authorized the use of cash collateral from the Petition Date through May 6, 2014.

8. Pursuant to the Agreed Order, the Restaurant Debtors agreed to, among other things, pay to Rewards Network weekly adequate protection payments in the following amounts (the "Adequate Protection Payments"):

|  |  |
|---|---|
| McMahan's: | $1,222.84 |
| Old Pueblo: | $ 958.10 |
| Metropolitan: | $ 504.25 |
| **Total:** | **$2,685.19** |

9. Pursuant to Section 8(e) of the Agreed Order, the authorization granted to the Restaurant Debtors to use cash collateral under the Agreed Order will terminate automatically if "any of the Restaurant Debtors cease[s] to operate its business without the prior written consent of Rewards Network…."

10. Restaurant Debtor Metropolitan Grill ceased to operate its business on May 26, 2014. The Restaurant Debtors failed to provide Rewards Network with any notice of this event.[2]

11. On May 29, 2014, when Rewards Network discovered that Metropolitan Grill had ceased to operate, undersigned counsel sent a notice to the Restaurant Debtors (absent

---

[2] The Agreed Order expired by its terms on May 6, 2014. At that time, the parties agreed to continue to operate under the terms of the Agreed Order until such time as the parties were able to finalize and lodge a second agreed cash collateral order with the Court. However, in the interim, Rewards Network discovered that Metropolitan Grill ceased to operate, which prompted this dispute.

1 any obligation to do so): (i) advising that Metropolitan Grill is in default under Section 8(e) of the Agreed Order; (ii) demanding that Metropolitan Grill provide an immediate accounting; and (iii) demanding that all funds be sequestered for Rewards Network and that no expenses, including payroll, be paid going forward. A true and correct copy of the May 29, 2014 e-mail is attached hereto as "**Exhibit B**."

12. On June 4, 2014, Metropolitan Grill provided its bank statements for the months of April and May 2014, which statements evidenced that approximately $28,000.00 in transfers, withdrawals and checks were debited from Metropolitan Grill's checking account <u>on or after</u> May 26, 2014. Significantly, payroll was paid in regular course on May 29, 2014 and May 30, 2014 -- *i.e.*, at least three days after the termination of the right to use cash collateral and the same day Rewards Network's notified Debtors' counsel that payroll was not to be paid from Rewards Network's cash collateral. A true and correct copy of the bank statements is attached hereto as "**Exhibit C**."

13. On June 5, 2014, Rewards Network sent a follow-up notice to the Restaurant Debtors concerning Metropolitan Grill's unauthorized use of Rewards Network's cash collateral and demanding that the Restaurant Debtors compensate Rewards Network for the loss of its collateral. A true and correct copy of the June 5, 2014 e-mail is attached hereto as "**Exhibit D.**"

14. The Restaurant Debtors responded in an e-mail dated June 5, 2014, unapologetically, stating that they are only willing and able to continue to make the Adequate Protection Payments in the amounts provided for in the Agreed Order. A copy of the Restaurant Debtors' June 5, 2014 e-mail is attached hereto as "**Exhibit E**."

15. The continuation of adequate protection payments, without any assurance that the cash collateral order will actually be followed upon a default (or remedied), does not provide Rewards Network with sufficient adequate protection.

16. Given the closure of the Metropolitan Grill and the outstanding amount of Rewards Network's claims, on June 6, 2014, pursuant to the reservation of rights contained in the Limited Objection filed by Rewards Network with respect to the retainers paid to SDG from Rewards Network's cash collateral, Rewards Network demanded the turnover of the $5,000.00 retainer for Metropolitan Grill. A true and correct copy of the June 6, 2014 e-mail is attached hereto as "**Exhibit F**."

17. To date, SDG has failed and refused to confirm that he is still in possession of the $5,000.00 retainer for Metropolitan Grill. He has also failed and refused to agree to surrender the retainer as part of any extension to use cash collateral.

## II. REWARDS NETWORK IS NOT ADEQUATELY PROTECTED.

The Restaurant Debtors have proven themselves to be incapable of following court orders and have demonstrated a disregard for their obligations with respect to the use of Rewards Network's cash collateral. When Metropolitan Grill shut its doors on May 26th, that constituted a default under the Agreed Order. At that time, without the need for notice, all funds should have been sequestered for the benefit of Rewards Network and no expenses or payroll should have been paid. Yet, according to the bank statements provided by Metropolitan Grill, approximately $28,000 in transfers, withdrawals and checks were debited from the checking account on or after May 26th and payroll was also paid in regular course, beginning on May 29, 2014. Moreover, Rewards Network's cash collateral was expended even after Rewards Network expressly demanded that the Metropolitan Grill not do so. The Restaurant Debtors unapologetically claim that Metropolitan Grill's expenditures were somehow proper and, even if they were not, the funds are now irretrievable. Rewards Network has been irreparably harmed in the amount of at least $28,000.

In addition to the foregoing, Rewards Network has not and does not consent to the use of its cash collateral for the payment of the Restaurant Debtors' legal fees, whether incurred prepetition or otherwise. The retainers were clearly paid postpetition from Rewards Network's

Quarles & Brady LLP
Phoenix, Arizona 85004-2391

cash collateral and are subject to surrender and disgorgement.  SDG has stated that the funds will not be turned over "under any circumstances."  *See* Exhibit F.

Rewards Network must be compensated for the loss of its cash collateral. However, the Restaurant Debtors and SDG refuse to either make increased adequate protection payments to compensate Rewards Network for the unauthorized expenditures, or turnover the Metropolitan Grill retainer.  Rewards Network is unwilling to consent to use of cash collateral on the same terms previously agreed to because the Debtors have demonstrated they will not honor the terms of the cash collateral order upon a default, and there will not be any ability to claw back the wrongfully spent funds once they are dissipated.  Rewards Network would be willing to consent to use of cash collateral if (i) the Debtors increase the amount of the adequate protection payments, and (ii) immediately enter into a deposit account control agreement relating to the Debtor's DIP accounts which (a) requires the Debtors to maintain minimum balances in their accounts in an amount acceptable to Rewards Network, and (b) provides Rewards Network with the ability to put a freeze on such accounts immediately upon an event of default under any extended cash collateral order.

### III.　**CONCLUSION**.

WHEREFORE, based on the foregoing and the entire record before the Court in this matter, Rewards Network respectfully requests that the Court enter an Order:

A.　Denying the Restaurant Debtors' request to continue to use Rewards Network's cash collateral in accordance with the Agreed Order;

B.　Requiring SDG to immediately surrender and pay the Metropolitan Grill retainer in the amount of $5,000.00 to Rewards Network;

C. Requiring that any future interim cash collateral order entered into between Rewards Network and any of the Restaurant Debtors provide for increased adequate protection payments, sufficient to compensate Rewards Network for Metropolitan Grill's unauthorized use of cash collateral; and

D. Granting Rewards Network all available remedies for any unauthorized use of cash collateral under the Bankruptcy Code and applicable Ninth Circuit law; and

E. Granting such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

RESPECTFULLY SUBMITTED this 13th day of June, 2014.

QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391

By /s/ Isaac M. Gabriel
    Isaac M. Gabriel
    Amy D. Sells

*Attorneys for Rewards Network Establishment Services Inc.*

COPIES of the foregoing sent via e- mail this 13th day of June, 2014, to:

Scott D. Gibson
LAW OFFICE OF SCOTT D. GIBSON, PLLC
6303 E. Tanque Verde Road, Suite 210
Tucson, AZ 85715
Email: scott@sdglaw.net
*Attorneys for Debtor*

Gerald K. Smith
John C. Smith
Smith & Smith Law Offices, PLLC
6720 E. Camino Principal, #100
Tucson, AZ 85715
Email: gerald@smithandsmithpllc.com

| | |
|---|---|
| 1 | Email: john@smithandsmithpllc.com<br>*Local Counsel for Can Capital* |
| 2 | Pat P. Lopez<br>Rebecca K. O'Brien |
| 3 | Rusing Lopez & Lizardi PLLC<br>6363 N. Swan Rd., #151 |
| 4 | Tucson, AZ 85718<br>Email: plopez@rllaz.com |
| 5 | Email: robrien@rllaz.com<br>*Attorneys for LALI Investments, LLC* |
| 6 | |
| 7 | Christopher J. Pattock<br>OFFICE OF THE U.S. TRUSTEE |
| 8 | 230 N. First Avenue, Suite 204<br>Phoenix, AZ 85003-1706<br>Email: Christopher.J.Pattock@usdoj.gov |
| 9 | |
| 10 | Jonathan M. Saffer<br>Jill H. Perrella |
| 11 | SNELL & WILMER L.L.P.<br>One S. Church Avenue, Suite 1500 |
| 12 | Tucson, AZ 85701<br>Email: jmsaffer@swlaw.com |
| 13 | Email: jperrella@swlaw.com<br>*Attorneys for Alliance Bank of Arizona* |
| 14 | Frederick J. Petersen<br>David J. Hindman |
| 15 | MESCH, CLARK & ROTHSCHILD, P.C.<br>259 N. Meyer Avenue |
| 16 | Tucson, AZ 85701<br>Email: ecfbk@mcrazlaw.com |
| 17 | Email: fpetersen@mcrazlaw.com<br>Email: dhindman@mcrazlaw.com |
| 18 | *Attorneys for Shamrock Foods Corporation* |
| 19 | Matthew H. Sloan<br>JENNINGS HAUG & CUNNINGHAM, L.L.P. |
| 20 | 2800 N. Central Avenue, Suite 800<br>Phoenix, AZ 85004 |
| 21 | Email: mhs@jhc-law.com<br>*Attorneys for National Bank of Arizona* |
| 22 | |
| 23 | Alan S. Gerger<br>DUNN, NEAL & GERGER, LLP<br>3006 Brazos Street |
| 24 | Houston, TX 77006<br>Email: asgerger@dnglegal.com |
| 25 | *Attorneys for CAN Capital, Inc.* |
| 26 | |

| | |
|---|---|
| 1 | William Scott Jenkins |
| | Jill M. Hulsizer |
| 2 | Myers & Jenkins, P.C. |
| | One East Camelback Road |
| 3 | Suite 500 |
| | Phoenix, Arizona 85012 |
| 4 | Email: wsj@mjlegal.com |
| | Email: jmh@mjlegal.com |
| 5 | *Attorneys for Creditors, Roseville Tucson, LLC, HJ Tucson, LLC,* |
| | *Rielly Tucson, LLC, Obradovich Tucson, LLC and* |
| 6 | *Fair Oaks Tucson, LLC* |
| 7 | W. Scott Jenkins, Jr. |
| | Alissa A. Brice |
| 8 | Ryley Carlock & Applewhite |
| | One North Central Ave., #1200 |
| 9 | Phoenix, AZ 85004-4417 |
| | Email: sjunkins@rcalaw.com |
| 10 | Email: abrice@rcalaw.com |
| | *Attorneys for Resolute Commercial Services* |
| 11 | |
| 12 | /s/ Lisa Cummings |

Quarles & Brady LLP
Phoenix, Arizona  85004-2391

QB\116122.00201\27672641.1